608 F.2d 830
 79-2 USTC P 9679
 UNITED STATES of America and Larry D. Thompson, Special
Agent of the Internal Revenue Service, Petitioners,
v.
Marshall MacKAY, Assistant Vice President, First National
Bank of Gillette, Respondent,
v.
Jimmie D. and Cheryl RODGERS, Intervenors-Appellants.
 No. 79-1243.
 United States Court of Appeals,
Tenth Circuit.
 Submitted Sept. 20, 1979.
Decided Oct. 30, 1979.
 
 M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Charles E. Brookhart and Aaron Philip Rosenfeld, Tax Div., Dept. of Justice, Washington, D. C., for petitioners; Charles E. Graves, U. S. Atty., and Lawrence A. Bobbitt, III, Asst. U. S. Atty., Cheyenne, Wyo., of counsel.
 Joseph H. Thibodeau, Denver, Colo., for intervenors-appellants.
 Before McWILLIAMS, BARRETT and DOYLE, Circuit Judges.
 WILLIAM E. DOYLE, Circuit Judge.
 
 
 1
 The respondent, Marshall MacKay, is assistant vice president of the First National Bank of Gillette, Wyoming. As such, he was served with a summons issued by the Internal Revenue Service pursuant to § 7602 of the Internal Revenue Code. This summons directed MacKay to produce all of the bank records of Jimmie D. and Cheryl Rodgers for 1975, 1976 and 1977, whose tax liability for those years was under investigation. Larry D. Thompson, a special agent for the IRS who served the summons, notified the taxpayers that the summons had been issued. The Rodgers instructed the bank not to comply with the summons. After that, the IRS brought this action seeking to enforce the summons under I.R.C. §§ 7402(b) and 7604(a). The Rodgers, whose interests were primarily involved, intervened in the enforcement proceedings.
 
 
 2
 The district court found that the IRS had not commenced or recommended the commencement of a criminal prosecution; that the IRS had not exceeded the scope of its summons authority; and found, in addition, that the witnesses requested to be called by the Rodgers' counsel had not been summoned and that it was doubtful that their testimony would have been materially relevant. The trial court's order requiring enforcement was entered on February 6, 1979. Thereafter, this court denied the motion of the taxpayers for stay of the district court's order.
 
 ISSUES
 
 3
 The cause is before us for consideration of validity of the summons. The central issue is whether the IRS has in this case abused its civil summons power granted to it under I.R.C. § 7602 in that it is being used, according to the Rodgers' contention, to pursue an investigation which is strictly criminal. The other issues are less central than the one mentioned and include whether the IRS failed to comply with required administrative procedures such as the notice provision of I.R.C. § 7605(b) plus a procedure specified in the Internal Revenue Manual. There is a further general argument that the summons is overbroad, is burdensome and harassing, and that it is essentially a fishing expedition. The argument is made also that it is an improper extension of a criminal investigation. This, however, is a duplication of the first issue which is cited above. Other than what we have already mentioned, there are certain alleged errors which might be classified as trial or hearing errors such as the judge's refusal to allow certain witnesses to be called, contentions that the judge was prejudiced, and that the court's order is defective in that there are mistakes in citations and a failure to utilize findings as required by United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964).
 
 
 4
 For the first time appellants raise in their reply brief two issues: first, by analogy from Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a et seq. (1976), they argue that the burden of proof should be on the government to disprove a criminal purpose. Finally, another reply brief contention is that the documents are protected from disclosure by Title XI of the Financial Institutions Regulatory and Interest Rate Control Act of 1978, Pub.L. No. 95-630, 92 Stat. 3697 (12 U.S.C.A. §§ 3401-3422 (Supp.1979)).
 
 SUMMARY OF THE FACTS
 
 5
 This investigation was instituted in April 1978, following receipt of information from the Campbell County, Wyoming Sheriff's Office and the FBI that the taxpayers were allegedly receiving and selling stolen oil and that there was a possibility of unreported income in these activities. The criminal investigation was initiated by the Criminal Investigation Division, which then notified the Audit Division that the investigation would, from that point on, be conducted jointly with it.
 
 
 6
 Dwight J. Sparlin, who was assigned to the case, testified that he had examined the Rodgers' tax returns and their county land records, had computed net worth and had determined that there was a possibility of unreported income. Following this, in August 1978, the case was transferred to another agent, Larry D. Thompson, who testified that at the time that he commenced the investigation he had little information which would indicate that the tax returns were incorrect.
 
 
 7
 The testimony was that Thompson and the others sought to ascertain the correctness of the tax returns of appellants. At the time the summons was issued the investigation was at a preliminary stage, and the purpose of the investigation was to ascertain the correctness of the tax returns for the years 1975, 1976 and 1977, and to determine whether there were any returns due but unfiled. Thompson and a revenue agent interviewed Rodgers in the presence of his attorney and his accountant in 1978 and sought to examine the taxpayers' books and records. It was only after his having been denied access to the records that Thompson went about issuing the summons.
 
 
 8
 I.R.C. § 7602 is relatively broad. It authorizes the summoning of taxpayer's books and records to ascertain the correctness of any return, making a return (where none has been made), determining the liability of any person for any internal revenue tax, or collecting any such liability. It does not require the existence of probable cause that the law has been violated. Rather, it has been compared to the power and authority of the grand jury. See United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964).
 
 
 9
 The Supreme Court in Powell refused to read § 7605 in such a way as to impose a probable cause standard upon the Commissioner from the expiration date of the ordinary limitations period forward. The Court said that the agents under the statute were required to exercise prudent judgment in wielding the extensive power granted to them under the I.R.C. The Supreme Court concluded by saying that the Commissioner need merely show that the investigation be conducted pursuant to a legitimate purpose; that the inquiry may be relevant to the purpose; that the information sought is not within the Commissioner's possession; and that administrative steps required by the code have been followed. The Court said that as to the hearing provided it was not meaningless since the taxpayer at the hearing could challenge the summons on any appropriate ground. Also, the Court was free to inquire into the underlying reasons for the examination. The Court added that the burden of showing abuse of the court's process was on the taxpayer; that this was not satisfied by a mere showing that the statute of limitations relating to ordinary deficiencies had run or that the records had been once examined.
 
 
 10
 A more pointed and relevant decision of the Supreme Court is United States v. LaSalle National Bank, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978). Here the Supreme Court reviewed the scope of the IRS' authority under § 7602 and recognized that the civil aspects of tax investigations are necessarily intertwined in the criminal system. See 437 U.S. at 309, 98 S.Ct. 2357. The essence of the decision was that if the inquiry is solely to satisfy the criminal requirement, it can then be considered illegal. In judging this, it must appear that the summons has issued before there has been a recommendation by the IRS to the Justice Department for a criminal prosecution. Id. at 311, 318, 98 S.Ct. 2357. Prior to the recommendation of the Justice Department it must appear that the summons authority is exercised in good faith and in accordance with United States v. Powell, 379 U.S. at 57-58, 85 S.Ct. 248, which requires that the investigation have a legitimate purpose; that the inquiry is relevant to the purpose; that the information sought is not possessed by the Service. It must also have been in accordance with the administrative steps required by the code.
 
 
 11
 The LaSalle decision added a requirement that the civil aspect of the investigation was not to have been abandoned. See 437 U.S. at 318, 98 S.Ct. 2357. Also, the taxpayer has the burden of proving that the IRS is acting in bad faith. Id. at 316, 98 S.Ct. 2357.
 
 
 12
 Counsel in the present case would have us modify the guideline as to burden of proof by shifting the burden to the government once the taxpayer shows that the purpose is criminal. In that instance, according to appellants, the IRS would have to establish the existence of a civil purpose or disprove the existence of a criminal purpose. This is a somewhat ingenious argument, but it does not comply with that which was held in LaSalle, wherein the matter was fully discussed, and the Court concluded that civil and criminal tax fraud are coterminous. Id. at 316, 98 S.Ct. 2357. If the Supreme Court had wished to reverse the burden of proof requirement, it would have done so. Counsel would then have us carve out an exception to the LaSalle case. Such action would not be warranted, and we reject the invitation.
 
 
 13
 At bar there is no showing that the summons was issued subsequent to any recommendation to the Justice Department for a criminal prosecution. A criminal prosecution had neither been commenced nor had it been recommended. The only question then is the narrow factual one whether the standards set up in Powell and LaSalle are met. We conclude that they were.
 
 
 14
 First, there was testimony at the hearing which supported the legitimacy of purpose which was said to ascertain the correctness of the returns in the three-year period. Special Agent Larry D. Thompson testified to what their objects were. It is true that the investigation was conducted by the Criminal Investigation Division. Still, it cannot be concluded from this that the civil investigation was abandoned since there is evidence that this objective was also being pursued. Nor does the fact that the investigation was conducted from the outset by the Criminal Division conclude the matter. This does not show that it was solely a criminal effort. See Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971). The activities of the agents were entirely consistent with the concept that criminal tax fraud charges and civil penalties are interrelated.
 
 
 15
 Second, the materials sought were entirely relevant. The matters pertained to the three years which were in question. Agent Thompson said that the information was necessary to the computation of the tax liability of the Rodgers. There is nothing in sight that was inconsistent with an effort to compute civil liability.
 
 
 16
 Third, there is no indication that they were pursuing matters which they were already aware of. The bank records were certainly not already in the possession of the IRS. Thompson said that without the bank records he had nothing else to depend on. Witness Baker testified that Agent Adair had not gone far in the investigation. He was unable to give definite testimony as to the extent of Adair's having looked at the records of the taxpayers.
 
 
 17
 Fourth, the administrative steps prescribed by Powell And LaSalle were carried out. These procedural provisions were not shown to have been violated. The taxpayers were notified as required by § 7609(a)(1), and they exercised their right to stay compliance pursuant to § 7609(b). Also, they intervened in the enforcement proceeding. The contention is that the IRS failed to comply with § 7605(b), which prohibits duplications of examinations. Section 7605(b) requires that taxpayers be given written notice if more than one inspection of their records is necessary. There was not a notice given under § 7605(b). The answer is, however, that this requirement of notice is not absolute. The courts have generally held that it does not apply where the records are in the hands of a third person such as the First National Bank of Gillette in this case. United States v. Krilich, 470 F.2d 341, 350 (7th Cir. 1972), Cert. denied 411 U.S. 938, 93 S.Ct. 1897, 36 L.Ed.2d 399 (1973); United States v. Dawson, 400 F.2d 194, 200 (2d Cir. 1968), Cert. denied 393 U.S. 1023, 89 S.Ct. 632, 21 L.Ed.2d 567 (1969); DeMasters v. Arend, 313 F.2d 79, 86 (9th Cir.), Cert. dismissed 375 U.S. 936, 84 S.Ct. 341, 11 L.Ed.2d 269 (1963).
 
 
 18
 Fifth, it is contended that the Internal Revenue Manual was not complied with since the IRS did not provide the bank with a written request for information. This would appear, however, to have been an internal IRS operating procedure and not one of the administrative steps required by the Powell and LaSalle decisions.
 
 
 19
 Sixth, it is argued that the circumstances support the conclusion that the civil aspect had been abandoned and that the criminal object had fully taken over. In effect, counsel would have us ignore the testimony of the agents, which is in the record, that the IRS had not abandoned all civil tax sanctions. This could be regarded as part of the burden of proof which we have already discussed. The IRS has shown that the civil objective had not been abandoned, and this satisfies that which was prescribed by LaSalle. Moreover, there was no showing that there was a delay in recommending criminal prosecution. Indeed, Thompson testified that he had never recommended criminal prosecution.
 
 
 20
 Counsel has also raised other issues, including the applicability of the Right to Financial Privacy Act of 1978, which protects the disclosure of bank records. This, however, is in a wholly different context. It cannot without more operate in favor of protection of records in the present setting. Again, it is an ingenious argument. Unfortunately for the Rodgers, it is not supported by legislative history, nor by express or implied provision in the Right to Financial Privacy Act. Thus, there is no basis for saying that it overrides the summons authority contained in the I.R.C.
 
 
 21
 Other issues are raised such as the inherent burdensomeness of effort, the damage to the business reputation of the taxpayers, the prejudice of the judge in this instance, and the alleged mistakes in citation in the district court's order. None of these have any merit. There is no showing that the taxpayers were prejudiced by the errors in citing to the statutes. Nor is there any showing of bias or prejudice on the part of the district judge. To be sure, he made adverse rulings, but this necessary aspect of judging does not show bias or prejudice.
 
 
 22
 It is our conclusion that there is ample evidence in the record in support of the district court's decision. We also conclude that the requirements of the law which involve interpretations by the Supreme Court have been met.
 
 
 23
 Accordingly, the judgment of the district court enforcing the summons is affirmed.