**UNITED STATES of America and J. Boyd Gee, Revenue Agent, Internal Revenue Service, Plaintiff-Appellee,**

**v.**

**Peter E. BERNEY and Rebecca A. Berney, Defendants-Appellants.**

**UNITED STATES of America and J. Boyd Gee, Agent, Internal Revenue Service, Plaintiff-Appellee,**

**v.**

**Peter E. BERNEY, as President of S.P.C. Financial Services, Inc., and S.P.C. Financial Services, Inc., Defendants-Appellants.**

**Nos. 82–1040, 82–1041.**

United States Court of Appeals,
Tenth Circuit.

July 15, 1983.

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Charles E. Brookhart and Michael J. Roach, Attys., Tax Division, Dept. of Justice, Washington, D.C., Brent D. Ward, U.S. Atty., Salt Lake City, Utah, for plaintiff-appellee.

H. Delbert Welker, Murray, Utah, for defendants-appellants.

Before SETH, Chief Judge, and BARRETT and McKAY, Circuit Judges.

BARRETT, Circuit Judge.

Peter E. Berney and Rebecca A. Berney, taxpayers, and S.P.C. Financial Services, Inc. (S.P.C.) appeal from an order of the district court enforcing two Internal Revenue Service (IRS) summonses.

On May 13, 1980, J. Boyd Gee, an IRS agent, issued two summonses to the Berneys. The first summons related to an investigation of the Berneys' personal tax liability of 1977 and 1978. This summons required the Berneys to produce various

bank records including bank statements, cancelled checks, deposit slips, general ledgers, journals, and other data supporting their income and deductions. The summons also required the Berneys to provide the name, address, and identification number of all foreign and domestic trusts of which the Berneys were grantors, settlors, trustees or beneficiaries. The second summons related to an investigation into the tax liability of S.P.C. for 1978. It required S.P.C. and Peter Berney, its president, to produce certain corporate records as well as copies of the minutes of all meetings of the board of directors and shareholders for 1978.

On October 6, 1980, petitions to enforce the summonses were filed and an order to show cause in each case was served on the Berneys the following day. On November 4, 1980, a hearing on the order to show cause was held before the United States Magistrate. Although the Berneys did not personally appear, they were represented by counsel. During the hearing, counsel for Berneys argued for the first time that the summonses should not be enforced because the IRS had failed to comply with the Privacy Act of 1974, 5 U.S.C.A. § 552a. Counsel also argued that the summonses were overly broad, and lacked particularity and dates.

At the conclusion of the hearing the magistrate requested that the United States Attorney research the law delineating the necessity of the IRS to comply with the Privacy Act under the facts herein and to submit a memorandum within fifteen days.

The United States did not submit a memorandum within the requested fifteen days. Upon inquiry from the magistrate, the Assistant United States Attorney reported difficulty in her research "because no applicable law could be found" but that "research would be pursued diligently and a memorandum would be submitted soon."

On January 22, 1981, at a time when the United States had still not filed the requested memorandum, the Berneys moved to dismiss for failure to prosecute. A motion hearing was held on February 3, 1981 at which time the United States Attorney submitted the requested memorandum.

Thereafter, in denying the Berneys' motion to dismiss, the magistrate found: the Government's memorandum was submitted 2½ months after the time ordered; under Fed.R.Civ.P. 41(b) the court had discretionary authority to dismiss an action for failure to prosecute; there was no precise rule as to what circumstances justify a dismissal for failure to prosecute; the delay in the case was "particularly improper, since the court [was] admonished by the Congress to expedite Internal Revenue Service summons enforcement proceedings"; the United States Attorney was making an effort to submit the required memorandum and the issue raised was unique; and, without condoning the delinquency surrounding the submission of the memorandum, the requested dismissal would be unduly harsh and not warranted.

The district court accepted the magistrate's recommendation and denied the motion to dismiss. The Berneys' subsequent appeal from this order was dismissed for lack of appellate jurisdiction upon the ground that the district court's order was not a final order. Upon remand, the magistrate entered a second report and recommendation in which he found that the documents sought by the IRS were relevant to a reasonable inquiry of the Berneys' potential tax liability; the Privacy Act contained specific remedies for noncompliance; and that whether the IRS had complied with the Privacy Act is not a defense in a summons enforcement proceeding.

On December 8, 1981 the district court entered an order adopting the magistrate's report and recommendations. The court then ordered the Berneys to comply with the summonses.

On appeal the Berneys contend: (1) the petition enforcing the summonses should fail due to the IRS's failure to comply with rule 5(e) of the district court; (2) the summons issued to the Berneys was defective for being vague and overbroad; and (3) the IRS did not comply with the Privacy Act of

1974 by its failure to respond to their questions.

## I.

Berneys contend that the district court erred in refusing to dismiss the summons enforcement proceedings for lack of prosecution. Berneys argue that the IRS's petition for enforcement should have been dismissed after the United States Attorney failed to submit the memorandum on time in accordance with rule 5(e) of the Civil Rules of Practice of the United States District Court for the District of Utah. Berneys further argue that "[t]he rule [5(e)] does not state any penalties or offer any remedies for noncompliance. Respondents are therefore entitled to an order to dismiss appellees' petition for failure to prosecute pursuant to Rule 5(e)." We disagree.

■ A district court may, within its sound discretion, dismiss an action for want of prosecution. We will reverse the court's decision only when there is an abuse of that discretion. *Link v. Wabash R.R. Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *Petty v. Manpower, Inc.,* 591 F.2d 615 (10th Cir.1979); *Stanley v. Continental Oil Company,* 536 F.2d 914 (10th Cir.1976); *Davis v. Operation Amigo, Inc.,* 378 F.2d 101 (10th Cir.1967). In *Davis, supra,* we stated:

There is no dispute about the applicable law.

Both under Rule 41(b), F.R.Civ.P. and the inherent power of a judge, a case may be dismissed with prejudice for want of prosecution. The exercise of this power by the trial judge is discretionary and should be sustained upon appeal in the absence of abuse. A dismissal, with prejudice, is a harsh sanction and should be resorted to only in extreme cases. No precise rule can be laid down as to what circumstances justify a dismissal for failure to prosecute but the procedural history of each case must be examined in order to make such determination. The judge must be ever mindful that the poli-

cy of the law favors the hearing of a litigant's claim upon the merits.

378 F.2d at p. 103. (Footnotes omitted).

■ We hold that the district court properly exercised its discretion in denying the Berneys' motion to dismiss. The issue raised by the Berneys, i.e., the availability of the Privacy Act as a defense in an IRS summons enforcement proceeding, was, as observed by the magistrate, "unique". Furthermore, there is nothing to indicate that the 2½ month delay occasioned by the late filing of the requested memorandum was prejudicial to the Berneys, particularly when the initial hearing to show cause was continued by stipulation of the parties.

## II.

■ Berneys contend that the summons issued to them in conjunction with the IRS investigation of their personal returns for 1977 and 1978 "is defective for being vague and overbroad in requesting documents not relevant for a legitimate purpose."

The challenged summons, issued pursuant to I.R.C. § 7602 (1976), specifically requested:

Bank statements, cancelled checks and deposit slips for the period beginning 1/2/1977 and ending 12/31/78 for all checking accounts that the persons named above have signature authority over. Also the withdrawal and deposit slips for savings accounts and a schedule of loans and loan payments where the persons named above have had signature authority. All accounting records such as general ledgers, journals, workpapers, schedules and other recordings of transactions that support the income and deductions of the above named persons business operations.

All notes or contracts owned and in force for the period beginning 1/2/1977 and ending 12/31/1978.

The original securities owned and still in possession of the above named persons and all securities bought and sold with copies of brokerage transaction state-

ments for the period beginning 1/2/1977 and ending 12/31/1978.

Name, address and Federal Employer identification number for all domestic trusts created by you or where you are designated as the Grantor, Settlor, Trustee or Beneficiary.

Name, address and Federal Employer identification number for all Foreign Trust created by you or where you are designated as the Grantor, Settlor, Trustee or Beneficiary.

[R., Vol. I at p. 7]. We reject the Berneys' allegation that the summons was defective for vagueness. The summons sets forth with sufficient particularity the information requested.

The summoning power afforded the IRS under § 7602 has been repeatedly recognized. In *United States v. MacKay,* 608 F.2d 830, 832 (10th Cir.1979), we stated:

> I.R.C. § 7602 is relatively broad. It authorizes the summoning of taxpayer's books and records to ascertain the correctness of any return, making a return (where none has been made), determining the liability of any person for any internal revenue tax, or collecting any such liability. It does not require the existence of probable cause that the law has been violated. Rather, it has been compared to the power and authority of the grand jury. *See United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964).
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> The [Powell] Court said that the agents under the statute were required to exercise prudent judgment in wielding the extensive power granted to them under the I.R.C. The Supreme Court concluded by saying that the Commissioner need merely show that the investigation be conducted pursuant to a legitimate purpose; that the inquiry may be relevant to the purpose; that the information sought is not within the Commissioner's possession; and that administrative steps required by the code have been followed.

608 F.2d at p. 832.

Applying this standard to the summons herein, we hold that the summons issued to the Berneys was not overbroad. It was uncontested that the IRS needed the information requested to verify the accuracy of the income and expenses declared by the Berneys, and that the information provided by the Berneys was incomplete and sketchy. Under such circumstances, the summons was not overbroad.

### III.

█ Berneys contend that the IRS failed to comply with § 552a of the Privacy Act of 1974, 5 U.S.C. § 552a, by not responding to thirty questions, Appendix, *infra,* they sent to the IRS shortly after the IRS initiated an investigation into their 1977 and 1978 returns.

In rejecting this argument the magistrate found:

> Whether the Internal Revenue Service is in compliance with the Privacy Act is not a proper inquiry in these proceedings and is not a defense to summons enforcement. The obligations of the Internal Revenue Service in the use and enforcement of its summons authority are those obligations explained in *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). Those obligations were not expanded by the Privacy Act because that Act contains its own remedies for noncompliance. The reasoning employed by the court in *United States v. Wills,* 475 F.Supp. 492 (W.D.Fla.1979) with respect to the Freedom of Information Act not being a defense in summons enforcement proceedings is equally applicable to the Privacy Act. In that case the court stated:
>
>> "With respect to the FOIA defense ... the court is aware of no provision in the Internal Revenue Code which would require the enforcement of an Internal Revenue Service summons to be conditioned on Internal Revenue Service compliance with FOIA. On the contrary, FOIA, 5 U.S.C. § 552, contains specific provisions for its enforcement none of which contemplate denial

of enforcement of an Internal Revenue Service summons. As a practical matter, to condition the enforcement of Internal Revenue Service summonses on FOIA compliance would defeat the intent of Congress to provide a speedy method for enforcement of such summonses."

Nor was the Internal Revenue Service required to respond to the written inquiries from the respondents in these summary investigative proceedings. Their attorney was given opportunity at the hearing to cross-examine the petitioner, and nothing was developed indicating a need for further discovery.

[R., Vol. I at pp. 76–77]. *See also: Mason v. Alexander,* 554 F.2d 129 (4th Cir.1977), *cert. denied,* 434 U.S. 877, 98 S.Ct. 229, 54 L.Ed.2d 157 (1977); *United States v. Wills,* 475 F.Supp. 492 (M.D.Fla.1979).

We agree with the magistrate's findings, as adopted by the district court, that the IRS was not required to answer the 30 questions propounded by the Berneys and that whether the IRS has complied with the Privacy Act is not a defense to the summons enforcement proceedings herein. We rejected a similar type of argument in *United States v. MacKay, supra,* at 834, in considering the viability of the Right to Financial Privacy Act of 1978 as a defense against an IRS summons:

> Counsel has also raised other issues, including the applicability of the Right to Financial Privacy Act of 1978, which protects the disclosure of bank records. This, however, is in a wholly different context. It cannot without more operate in favor of protection of records in the present setting. Again, it is an ingenious argument. Unfortunately for the Rodgers, it is not supported by legislative history, nor by express or implied provision in the Right to Financial Privacy Act. Thus, there is no basis for saying that it overrides the summons authority contained in. the I.R.C.

WE AFFIRM.

APPENDIX

Mr. Peter E. Berney
939 Donner Way # 201
Salt Lake City, UT 84103
October 9, 1979

Mr. Ken DeBry
Internal Revenue Agent
465 South 400 East
Salt Lake City, UT 84111

Dear Sir:

We have your letter requesting an examination of our records and find this request is not based on any specific matter, but is really a general search for information. We consequently feel that this request may be premature.

We have examined the provisions of the Privacy Act of 1974, numerous court decisions, Freedom of Information Act of 1966, and feel that further information need be furnished us. Numerous court decisions i.e., U.S. v. Powell 327 U.S. 217, Sherar v. Cullen 481 F 2nd 945, Pacific Mills v. Kenefick 99 F 2nd 188, Oklahoma Press Publishing Co. v. Walling 327 U.S. 217, along with the above mentioned acts of congress do definitely indicate that the Internal Revenue Service must first inform the taxpayer in writing of the information requested. We are, accordingly, requesting the following:

1. Please advise the principal and specific purpose(s) for which the information will be used in any capacity.

2. Please advise if this is a valid investigation of the kind authorized by the Federal Statute.

3. Please advise if the disclosure of the information requested is mandatory or voluntary on the part of the taxpayer. If mandatory, what penalties will result for failure to comply?

4. How will the taxpayer be affected if the information requested is not furnished?

5. Please state the exact reason(s) for the examination of 1977 in detail.

6. If there are any exact items of income or expense in question on the tax re-

turn, please specify, if any in fact exist.

7. Please state why this specific income or expense is being examined or is in question.

8. Please explain why and what issue in law or in fact is questioned, if any.

9. Please state whether there is a mistake on the tax return for 1977, or a misconception or misunderstanding of any item.

10. If there is in fact a mistake, please state what it is.

11. Please spell out the authority (specific section of the I R Code) for the solicitation of the information you are requesting.

12. Please state the routine uses which may be made of the information or any other use of the information.

13. We would like to know whether or not the demand for information is not too vague and broad in scope in accord with the I R Code. Please explain.

14. Will you please explain and show that the information you request is relevant and/or material to a lawful subject of inquiry.

15. Is this investigation pursuant to a legitimate purpose? If it is, please so state and clarify and explain.

16. Please show and prove that the information requested is not already in your possession or cannot be obtained from other sources.

17. Has the Secretary or his delegate determined that a further examination is necessary? If so, please show why and prove the fact.

18. Have all the other administrative steps required by the I R Code been followed to the letter of the law? Please state so and set forth supporting proof.

19. After initial investigation, has the Secretary or his delegate determined that a further examination is necessary and warranted? If so, prove and show cause.

20. Please state and show proof that this taxpayer has been properly notified and that further examination is deemed necessary.

21. Please state the name, address and phone number of any person(s) informing you of any question or concern involved in any item on any tax return or any activity of this taxpayer.

22. Please state exactly what was said, either verbal or written, concerning any item, tax return or activity of this taxpayer by any person(s) in # 22 above, informing or directing you to conduct an examination directly or indirectly.

23. Please state and prove that I am not being subjected to an examination based on or for any political, ideological, harassment, pressure tactic or bad faith purpose, and I am not being singled out for prosecution as an example to other taxpayers for any reason.

24. Is verification of any specific deductions limited to the scope of the examination, or is it to be referred elsewhere. Please state.

25. Will this examination amount to an arbitrary inquiry or inquisition on the part of the tax examiner? Please state why it cannot or will not be so, and explain it.

26. Please state and explain why I R Code Section 7605(b) does not apply to any examination of a taxpayer where "No taxpayer shall be subjected to unnecessary examination or investigations, . . ."

27. Please state the exact methods used, either past or present, to gather information concerning this taxpayer and whether information was gathered through the use of surveillance, phone-tapping, mail coverage, interviews, illegal entry, informers, spy or other.

28. Are there any objections to the use of electronic recorders during the examination? If so, please state so and explain.

29. Please state whether the examiner would be prejudiced against a taxpay-

er who arranges his affairs to minimize his taxes as the law permits.

30. Does the examiner consider it to be a patriotic duty not to use all legal means to effectively reduce his taxes?

Sincerely,

/s/ Peter Eric Berney

Peter E. Berney