**James W. COX d/b/a Cox Machine & Tool, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV–04–0085–F.**

United States District Court, W.D. Oklahoma.

Oct. 12, 2004.

Charles N. Woodward, Lisle & Woodward, Oklahoma City, OK, for Plaintiff.

Jennifer K. Brown, U.S. Dept. of Justice, Tax Division, Washington, DC, Robert Don Evans, Jr., U.S. Attorney's Office, Oklahoma City, OK, for Defendant.

## *ORDER*

FRIOT, District Judge.

This action is brought by taxpayer James W. Cox, d/b/a Cox Machine & Tool, under the Internal Revenue Code, 26 U.S.C. § 6330. That statute is part of the Internal Revenue Service Restructuring and Reform Act of 1998, enacted to provide certain taxpayer protections. *See, Mesa Oil, Inc. v. United States,* 2000 WL 1745280, *2 (D.Colo.2000) (reviewing legislative history and observing that the Act contains over sixty provisions to fortify taxpayer rights and improve customer service by the Internal Revenue Service).

In this action, the taxpayer-plaintiff invokes procedures for judicial review of IRS determinations as provided for under § 6330(d) of the Act, challenging the propriety of a determination of the appeals office of the IRS. That appeals office determination is stated in a "Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330" and is referred to in this order as the Notice or the Notice of Determination. The Notice pertains to federal employment taxes which are undisputedly owed by the taxpayer. The Notice determines that a levy by the government to collect the unpaid taxes is appropriate, given the balance of interests between the government's need

to efficiently collect the taxes and the taxpayer's legitimate concerns regarding intrusiveness.

The taxpayer raises two types of challenges to the propriety of this determination: the adequacy of the hearing which resulted in the Notice of Determination (referred to as the procedural issues and addressed in Part II.A. of this order); and the correctness of the matters actually determined in the Notice (referred to as the correctness issues and addressed in Part II.B. of this order).

## I. Initial Findings and Conclusions

The court has jurisdiction under 26 U.S.C. § 6330(d)(1)(B).

The Notice of Determination allowing the levy was issued by the IRS appeals office in Oklahoma City. The taxpayer, James W. Cox d/b/a Cox Machine & Tool, has its principal place of business in Oklahoma City. Venue is proper in this court.

■ The taxpayer's underlying tax liability is not in dispute. Because it is not, the judicial standard by which this court reviews the correctness of the government's determination stated in the Notice

is abuse of discretion. *See, Mesa Oil, Inc. v. United States*, 2000 WL 1745280 at *2 (D.Colo.2000) (applying abuse of discretion standard, defined as an arbitrary, capricious, whimsical, or manifestly unreasonable judgment, in a § 6330(d)(1)(B) case). Review of the correctness of the appeals office's determination is limited to the administrative record (AR). (Order, docket entry no. 22.)

■ The procedural issues raised in this action are legal issues which are considered *de novo*.[1] To some extent, review of these procedural issues depends upon the nature of the hearing conducted by the appeals office. Neither party has requested an evidentiary hearing to supplement the administrative record with any additional evidence about the nature of the hearing. The court bases its factual findings regarding the nature of that hearing on the administrative record.

The procedural background of this dispute is as follows.

The Notice of Determination was issued by the appeals office on December 30, 2003.[2] (AR at 5.) The Notice was issued following the taxpayer's request for a

---

1. The parties appear to presume that all issues are reviewed for abuse of discretion. The court's conclusion that the procedural issues are considered *de novo* therefore requires some explanation. Although never explicitly stating as much, *Mesa*, 2000 WL 1745280, cited in the text, implicitly recognizes that a different standard of review applies to the procedural issues than applies to correctness issues. Presented with a mix of both types of issues, *Mesa* quotes the legislative history of the Act for the proposition that a taxpayer may challenge "the determination" of the Appeals Office for abuse of discretion. *Mesa*, at *2. *Mesa* only refers to the abuse of discretion standard in its discussion of the IRS's inadequate balancing. *Id.* at *3. *See also, Custer County Action Ass'n v. Garvey*, 256 F.3d 1024, 1029–30 (10th Cir.2001) (while Federal Aviation Agency's decision is reviewed for abuse of discretion, procedural due process claims regarding the agency's

administrative procedures are considered *de novo*). Moreover, as a practical matter, *de novo* is the only type of review available when issues concerning the sufficiency of the nature of the § 6630 hearing are raised for the first time.

2. On December 30, 2003 the Appeals Office issued its first Notice of Determination. (AR at 233.) That Notice found that "The taxpayer has not fully paid this tax liability and none of the four conditions for withdrawing a lien under I.R.C. § 6323(j) are present in this case." (AR at 234.) However, I.R.C. § 6323(j) and the conditions specified in that statute do not appear to have ever been in issue, so this first Notice was erroneous. On January 7, 2004, the Appeals Office issued a corrected Notice of Determination. (AR at 5.) It is this corrected notice which is the subject of this action. (The first Notice was signed by "Leland Neubauer, Appeals Team Manager."

hearing by the appeals office, under 26 U.S.C. § 6330(a)(3)(B). The parties refer to the hearing before the appeals office as a collection due process hearing, and the "In Re" subject line of the Notice refers to the hearing as a collection due process hearing. (AR at 5.) As the government appears to be comfortable with that designation, this order also adopts it, at times, to refer to the hearing in question.

The issue determined by the Notice was the propriety of a proposed IRS levy, intended to collect $28,017.21 in unpaid federal employment taxes which remain due from the taxpayer under Form 941 for the four quarters of 2002. (AR at 77–78.)

That determination is stated in the Notice as follows:

> Based on the administrative record, as it currently exists, it is decided that a levy by the Government is appropriate as it balances the Government's need to efficiently collect these tax underpayments with concerns of intrusiveness.

(AR at 5.)

The Notice also references an "attached statement" which the Notice states "shows, in detail, the matters we considered at your Appeals hearing and our conclusions." Attachments to the Notice appear to include [3] the Case Activity Records of the appeals officer who conducted the collection due process hearing.[4] (AR at 9–10.) Those records are the appeals officer's work notes, including summaries of telephone conversations in which he participated. The notes are chronologically sequenced and appear to have been written by the appeals officer as he familiarized himself with the dispute, conducted the taxpayer's § 6630 collection due process hearing, and informed the taxpayer of the IRS's determination after that hearing.

Telephone conversations described in the appeal officer's Case Activity Records as occurring on December 15, 2003 and December 18 constitute what the government proposes was the taxpayer's collection due process hearing. The Case Activity Record for the December 15 call indicates that this conversation lasted ".75" of an hour. The same records indicate that during this phone conversation the appeals officer was told by the taxpayer's representative that the representative would check on the taxpayer's ability to pay current estimated taxes. The records indicate that on December 18,

---

The corrected Notice has a space for Mr. Neubauer's signature but is not actually signed, at least not as it appears in the AR at 5.) The summary materials relied on by both parties as the materials which explain the Appeals Office's determination in the corrected Notice appear to be attachments to the first Notice but may not have been actually attached to the corrected Notice. The Summary and Recommendation appear in the AR at 18–19.

3. The administrative record is not indexed or tabbed by document so it is not always possible to know with certainty which record documents were originally attached as exhibits to other record documents.

4. The Case Activity Report is replete with acronyms. Neither party has identified any definitions of these acronyms in the record (or in the briefs for that matter) and the court has simply done the best that it can to decipher these abbreviations. "VMS" is presumed to mean voice mail message; "TC" is presumed to mean a telephone call either initiated or received by the Appeals Officer; "POA" is presumed to mean the taxpayer's power of attorney, or, in this case, the taxpayer's representative; "TP" is presumed to mean the taxpayer; "ES" is presumed to mean estimated taxes; "RO" is presumed to mean the IRS Revenue Officer; "IRM" is presumed to mean the Internal Revenue Service Manual; "IA" is presumed to mean installment agreement; and the "NFTL" is presumed to mean the Final Notice, Notice of Intent to Levy and Notice of Your Right to a Hearing" based upon which the taxpayer requested a collection due process hearing before the appeals office.

2003, there was another telephone call between the taxpayer's representative and the appeals officer, during which the representative informed the IRS that the taxpayer could not make estimated tax payments. The December 18 conversation was essentially a continuation of the telephone call which began on December 15, 2003.

## II. Discussion of the Issues Presented with Additional Findings and Conclusions

### A. Procedural Issues: Challenges to the Sufficiency of the Hearing

The taxpayer argues that no hearing within the meaning of § 6630 was ever held because the telephone conversations in question were procedurally inadequate to constitute such a hearing. Specifically, the taxpayer argues that neither he nor his representative received any prior notice that what the taxpayer's brief calls the "impromptu" phone conversation of December 15, 2003 was intended to constitute his collection due process hearing. Without such advance notice, the taxpayer states that he had no opportunity to prepare for the hearing so that the hearing

did not provide a meaningful opportunity for him to present his position regarding the appropriateness of the levy. *See, Mesa, id.* at *6 (legislative history of the 1998 Act indicates Congress intended the taxpayer to have a meaningful hearing followed by judicial review). The second procedural deficiency which the taxpayer identifies is his contention that the hearing was not conducted by an impartial officer as required by § 6330(b)(3).[5]

### 1. Advance Notice

The government does not contest the taxpayers' position that his representative had no prior notice of the nature of the telephone calls in question. Rather, the IRS responds to the taxpayer's notice argument by observing, correctly, that during the December 15 call the taxpayer's representative was given an opportunity to provide additional information to the appeals officer. The IRS also points out that there is no indication in the record that the taxpayer's representative objected on December 15 to the hearing being held at that time, or objected at that time for lack of notice or on the basis of inadequacy of time to prepare.[6]

5. Before addressing either of these issues, one other procedural matter deserves comment. The taxpayer has not objected to the sufficiency of the hearing on the ground that the appeals officer's notes contained in the Case Activity Record do not provide an adequate record of what transpired during the conversations of December 15 or 18. As this argument has not been made, the court does not address it here except to state the obvious: a hearing officer's personal notes regarding the purported content of conversations between the hearing officer and the parties appearing before him, do not constitute a complete or objective record of what transpired during those conversations; when such notes constitute the only available record, as they do here, any reviewing court would question whether meaningful judicial review is even possible. *See, Mesa,* 2000 WL 1745280, *5, *7 (an adequate record of evidence or arguments pre-

sented at a § 6330 hearing "may be made either through audio tape recording, video tape recording, or stenographer; along with all paper documents presented by the parties"). In this action, given the lack of any argument to the contrary by the taxpayer, and given that neither party has objected to review of the record as it stands, the court presumes, and therefore finds, that the Case Activity Records accurately reflect what was said during the telephone conversations which the records purport to describe.

6. If the taxpayer's representative did not know the nature of the December 15 phone call even as that phone call was proceeding, this would certainly explain and excuse any failure to object. The result reached in this order, however, does not depend upon a finding that the taxpayer's representative did not, in fact, know that the IRS intended the phone

The court finds no indication in the record that the taxpayer or his representative had any prior notice regarding the date or time of the collection due process hearing. The court also finds no indication that even during the phone call of December 15 the taxpayer's representative had any clear notice that the call constituted the taxpayer's collection due process hearing.[7]

Hearings at the appeals level of the IRS have historically been conducted in an informal setting. *Mesa* at *6, citing 26 C.F.R. § 601.106(c) (entitled the "Nature of proceedings before Appeals [office of the IRS])." Testimony in such hearings is not under oath, a stenographer is not present, and there is no right to subpoena witnesses. *Id.* Congress did not indicate that it varied this standard with the passage of the Act, and no new IRS regulations purport to change this tradition of informality. *Id.* Thus, it is against this presumptively valid tradition of informality that the court measures the taxpayer's arguments regarding lack of notice. To do so, the court considers IRS policies and regulations, provisions contained in the Act, and general notions of due process.

The IRS regulation that *Mesa* cites as authority for the accepted informality in proceedings before the appeals office provides that "taxpayers may be represent themselves or may designate a qualified representative to act for them." 26 C.F.R. § 601.106(c). This provision presumes at least some advance notice of a hearing so that a taxpayer may secure representation if he or she chooses to do so.

Some of the provisions in the Act itself also suggest that Congress presumed a taxpayer would have prior notice of the time of his or her collection due process hearing. Section 6330(c) provides that the collection due process hearing must address any relevant issues raised by the taxpayer. Without adequate advance notice of when the hearing will take place, the taxpayer can hardly be expected to raise or formulate the relevant issues in any meaningful manner. Looking at the entirety of the Act, § 6330(a)'s requirement that a taxpayer must be given notice before a levy can occur, and the statute's general emphasis on the "Time and method for [such] notice," § 6330(a)(2), and its requirements regarding "Information [to be] included with [such] notice," § 6330(a)(3), clearly underscore the importance of notice to the taxpayer as one of the protections put in place by the Act.

■ Finally, although it is true that the Act does not import all federal due process protections into its requirements, it is also true that the opportunity to be heard at a meaningful time and in a meaningful manner is a bedrock principle of federal due process. *See, Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965) (a fundamental requirement of due process is the opportunity to be heard, granted at a meaningful time and in a

---

calls to constitute the hearing even as those calls progressed.

7. The Case Activity Records indicate that a voice message from the taxpayer's representative was received by the appeals officer on December 15, 2003; that the appeals officer determined that he would "hold [off on] mailing corr[espondence] to POA until after conf.," that he reviewed financial information prior to the conference, that later on December 15 he received another voice mail message from the taxpayer's representative, and

that "TC POA and held conf.," presumably meaning that he then made a telephone call to the taxpayer's representative and held the collection due process hearing. The entry for December 18 indicates that the appeals officer received a voice mail message from the taxpayer's representative, and that there was then a "TC POA," presumably meaning a telephone call between the appeals officer and the taxpayer's representative. The Case Activity Record entries for these dates never refer to the telephone calls as a "hearing."

meaningful manner). Inadequacy of notice of the hearing required by § 6330 inevitably impairs the protections which are explicitly provided for in that section.

■■ The court concludes that a taxpayer who invokes his right to a hearing under § 6330 is entitled to at least some minimal notice of the hearing. As the administrative record in this case does not show that any such notice was given before the telephone calls of December 15 or 18, and does not show that there was any agreement by the taxpayer to waive prior notice, the court concludes that no adequate collection due process hearing was provided to the taxpayer. As a result, this case must be remanded to the IRS for the purpose of holding a § 6630 due process hearing with adequate prior notice to the taxpayer.

### 2. Impartial Officer

Plaintiff's second procedural challenge to the collection due process hearing is that the IRS appeals officer who heard this case was not an impartial officer as required by § 6630(b)(3). This subsection of the statute is entitled "Impartial officer" and provides that the hearing provided for in § 6630 "shall be conducted by an officer who has had no prior involvement with respect to the unpaid tax." [8] Having found that remand for a new hearing is necessary on other grounds, the court need not determine whether the appeals officer who originally heard this matter was, at that time, impartial within the meaning of this statute. The court finds that, at least in the circumstances presented here, the statute's requirement that the presiding officer must have had no prior involvement with the unpaid tax disqualifies the original appeals officer from re-hearing the matter. Thus, it is the order of the court that, on remand, the collection due process hearing must be conducted by an appeals officer who has had no prior involvement with any aspect of the tax liability, and the related collection matters, which are involved in this case.

### B. Correctness Issues: the IRS's Determination that a Levy Is Appropriate

The taxpayer makes a number of arguments intended to show that the IRS abused its discretion when it determined that a levy was an appropriate collection action.

First, the taxpayer argues that the appeals officer failed to adequately consider his true financial circumstances. The taxpayer asserts that the appeals officer did not investigate whether estimated taxes for the then-current year were actually even required before determining that the taxpayer could not meet his current financial obligations based on the taxpayer's inability to pay estimated taxes. (AR at 9.) [9] The taxpayer also argues that many of his financial problems were created by an order from District Court of Oklahoma County, Oklahoma which required him to pay his ex-wife $2,000 per month, but that the IRS failed to consider the fact that this financial obligation was not permanent and that the taxpayer's circumstances would improve when the state court order was no longer in place.

---

**8.** The requirement of an impartial officer may be waived, 26 U.S.C. § 6330(b)(3), but there is no contention that the taxpayer did so.

**9.** Case Activity Records for December 15, 2003, indicate: "TA has not made any ES pmts for the current year and that IBIAs IRM rqmts are that the business reflect the ability to pay current taxes, current operating expenses, and the back taxes. TP will have to bring ES current prior to consideration of IA." Case Activity Records for December 18, 2003, indicate: "w/o the Es pmt TP is not open to IA."

Second, the taxpayer argues that because of the IRS's inadequate investigation of the estimated taxes issue, and because of its reliance on its incorrect conclusion that the taxpayer had "failed to make *any* [emphasis in original] payments under [a prior installment] agreement" with the IRS (AR at 19), that the IRS improperly found the taxpayer ineligible to be considered for an installment agreement,[10] which was the less intrusive alternative means of collecting the tax which the plaintiff proposed. The IRS admits that the statement in the Summary and Recommendation which supports the Notice of Determination and states that the taxpayer "failed to make *any* payments" under the installment agreement, was incorrect in that regard. United States' Response, at 11, n. 62. The taxpayer contends that he was actually making $500 monthly payments on the earlier installment plan until the IRS terminated the installment agreement for other reasons. Accordingly, the taxpayer argues that the emphasis which it is so apparent from the Summary and Recommendation that the appeals officer placed on the taxpayer's purported earlier default was misplaced.

Third, and somewhat in summary of these arguments, the taxpayer asserts that given the IRS's incorrect analysis of his financial circumstances, given the IRS's

improper reliance on the false premise that the taxpayer had failed to make any installment payments under an earlier agreement, and given the taxpayer's position that a levy would put the taxpayer out of business, it follows that the IRS's decision finding the levy appropriate was a decision which failed to balance the need for efficient collection of the tax with the legitimate concerns of the taxpayer that any collection action be no more intrusive than necessary. Thus, the taxpayer urges that the IRS's decision was in direct violation of § 6330(c)(3)(C) and constituted an abuse of discretion.

This order only addresses one aspect of these arguments, specifically, the question of whether the IRS balanced the government's and the taxpayer's competing interests. Having reviewed the Notice, the Case Activity Records of the appeals officer, the Summary and Recommendation, and other documents contained in the administrative record, the court finds that the IRS excluded the possibility of an installment agreement for this taxpayer based on its conclusion that the taxpayer could not meet his financial obligations. In support of its view that this exclusion is required when a taxpayer cannot meet his or her financial obligations, the IRS cited Internal Revenue Manual, section 5.14.7.2(4)(A)

10. The appeals officer's Summary and Recommendation states, on p. 2 (AR at 19), that "IRM 5.14.7.2.(4)(1) suggest[s] that In-business taxpayers should he able to reflect the ability to pay current operating expenses, current taxes, as well as the ability to pay on the back taxes prior to granting an installment agreement." It further states that "The business does not reflect the ability to pay current taxes, operating expenses, and repay the delinquent taxes." The Summary and Recommendation then goes on to note that the taxpayer had "previously been granted an installment agreement" and that "The Service terminated the agreement September 11, 2002, after the taxpayer failed to make *any* payments under the agreement." The Summary and Recommendation concludes that "The taxpayer does not currently meet the requirements for granting an installment agreement." Under the heading "Balancing of need for efficient collection with taxpayer concern that the collection action be no more intrusive than necessary," the Summary and Recommendation states: "The taxpayer does not meet the conditions for granting an in-business installment agreement. The taxpayer is not eligible for any other collection alternatives. Accordingly, it is determined that a less intrusive alternative to the levy does not currently exist."

(Summary and Recommendation, ¶2, AR at 19) for the rule that a taxpayer who cannot meet his financial obligations is not eligible to be considered for an installment agreement. This is not, however, what IRM 5.14.7.2(4) provides.[11] That provision states:

(4) When an inability to pay delinquent and accrued taxes is indicated, the following considerations are necessary:

(A) if the taxpayer cannot pay operating expenses and current taxes, then deferring action on delinquent and accrued taxes may serve no useful purpose. Appropriate collection action such as levy, seizure, or a trust fund penalty, should be considered, to protect the government's interest. The taxpayer's interests must also be considered, and the financial statement should be reviewed thoroughly with the taxpayer to determine if there is a way to reduce expenses in order to make payment on the taxes and avoid enforced collection action.

■ Far from automatically excluding a taxpayer with an on-going business from the balancing process otherwise required by the Act before a levy may be pursued, this provision states that if a taxpayer cannot meet current tax liabilities, then deferring collection action "*may*" serve no useful purpose. The provision also states that certain actions such as a levy "should be *considered*," not that they are required. It also provides that *despite* a taxpayer's

inability to meet obligations, "the taxpayer's interests *must* also be considered" and that the financial statement of the taxpayer should be reviewed thoroughly with the taxpayer "to determine if there is a way to reduce expenses in order to make payment on the taxes and avoid enforced collection action." (All emphasis added.) Thus, the provision of the Internal Revenue Manual relied upon by the IRS for the rule that the taxpayer was not eligible for consideration of an installment agreement actually indicates that even where the IRS determines that a taxpayer cannot meet his or her tax obligations, the balancing of interests required by the statute must nevertheless continue and less intrusive collection methods must be considered. The cited provision in the manual clearly does not preclude consideration of less intrusive collection actions such as an installment agreement.

The IRS's documents explain that its determination was based on the (now seen to be incorrect) understanding that the taxpayer was not eligible for an installment agreement. Consideration of an installment agreement was consequently precluded. The balancing expressly required by § 6630(c)(3)(C)—an analytical requirement which is clearly one of the most prominent remedial features of the 1998 legislation—did not occur.

For these reasons, the court concludes that the Final Determination constituted an abuse of discretion. Remand is there-

---

11. The court does not treat the Internal Revenue Manual as having the force of law. *United States v. Scott,* 37 F.3d 1564, 1582 (10th Cir.1994), *cert. denied sub nom. Skinner v. United States,* 513 U.S. 1100, 115 S.Ct. 773, 130 L.Ed.2d 669, and *sub nom. Caldwell v. United States,* 514 U.S. 1008, 115 S.Ct. 1323, 131 L.Ed.2d 203 (1995); *United States v. MacKay,* 608 F.2d 830, 834 (10th Cir.1979) (manual is merely "an internal IRS operating procedure"); *cf., Schweiker v. Hansen,* 450 U.S. 785, 789, 101 S.Ct. 1468, 67 L.Ed.2d 685

(1981) (internal Social Security Claims Manual "is not a regulation. It has no legal force."). The relevant Manual provision is cited and quoted here only because, as a factual and analytical matter, it is clear that the appeals officer's palpably incorrect reading of that provision derailed the analytical process required by the statute (as is discussed in this order). That erroneous reading thus goes far to explain the court's conclusion that the Final Determination constituted an abuse of discretion.

fore necessary to correct not only the procedural inadequacies of the collection due process hearing discussed in Part I.A. of this order, but also because the IRS's substantive determination constituted an abuse of discretion.[12]

### III. Conclusion

Having carefully considered the parties' submissions, the administrative record, and the relevant arguments and authorities, the court determines as follows.

The relief requested in Plaintiff's Brief in Chief is hereby **GRANTED**. The Final Determination of the appeals office of the IRS in this matter is **VACATED** and the Notice of Determination is **REMANDED** to the IRS for a new collection due process hearing.

The hearing on remand will be conducted, with adequate notice, by an appeals officer with no prior involvement in this case. The court mandates no particular method of recording the hearing or documenting the ensuing evaluative process, but the IRS should be mindful that any failure to create a complete and trustworthy record that will facilitate the judicial review provided for by § 6330(d)(1) may beget another remand.[13] Judge Babcock's comments in *Mesa* at *7 should provide the IRS with valuable guidance. At the hearing on remand, the appeals officer shall consider all matters cognizable under § 6330(c), including the balancing mandated by § 6330(c)(3)(C).

Nothing in this order constitutes a finding or suggestion as to the merits of the matter or as to the outcome of the proceedings on remand.

The Notice of Determination is hereby **REMANDED** to the appeals office of the Internal Revenue Service for proceedings consistent with this order.

---

**12.** This order makes no determination as to the merits of the taxpayer's argument that his financial circumstances were misunderstood by the original appeals officer. However, it will obviously be necessary on remand to carefully examine the taxpayer's arguments concerning his financial circumstances and the actual status of the his payments under the original installment agreement.

**13.** One of the indispensable prerequisites of an adequate record is a record that reliably reflects "that the [appeals officer] actually engaged in the required analysis prior to making her determination." *Mesa,* at *5.