James G. MALLAS, John William Flint, Robert V. Jones, Jr., Perry Brunk, Peoples Supply Company, Inc., Omega Energy, Inc., Revel, Inc., Trinity Properties, Inc., Genesis Leases, Inc., and Star Cross Properties, Inc., Plaintiffs,

v.

Alvin H. KOLAK, individually and in his official capacity as District Director, U.S. Internal Revenue Service, Joanne D. Miller, individually and in her official capacity as Greensboro District Tax Shelter Coordinator, U.S. Internal Revenue Service, William H. Ball, individually and in his official capacity as Chief, Examination Division, Greensboro, N.C. District Office, U.S. Internal Revenue Service Paul G. Topolka, individually and in his official capacity as Senior Attorney, Internal Revenue Service Regional Office, Greensboro, N.C., Jack D. Yarbrough, individually and in his official capacity as Regional Counsel, Internal Revenue Service, Fred T. Goldberg, individually and in his official capacity as Chief Counsel, Greensboro, N.C. District Office of the Internal Revenue Service, Alan I. Weinberg, individually and in his official capacity as District Counsel, Internal Revenue Service, Greensboro, N.C. Office, Larry L. Davis, individually and in his official capacity as Chief, Appeals Office, Southeast Region, Internal Revenue Service, Greensboro, N.C., Robert S. Forrest, individually and in his official capacity as an Appeals Officer, Internal Revenue Service, Greensboro, N.C., Internal Revenue Service, and United States of America, Defendants.

No. C–88–1045–G.

United States District Court,
M.D. North Carolina,
Greensboro Division.

Sept. 13, 1989.

G. Nicholas Herman, Roger D. Bernholz, Terry G. Harn, and Steven A. Bernholz, Chapel Hill, N.C., for plaintiffs.

Edward J. Snyder, Michael J. Kearns, Gerard J. Mene, and J. Stephen Carlton, Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

### MEMORANDUM OPINION

ERWIN, Chief Judge.

This matter is before the court upon the Government's motion to dismiss the complaint for lack of jurisdiction and failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b). Oral argument was heard by the court on May 25, 1989.

Plaintiffs concede that: (1) individual defendants are not defendants under the alleged Privacy Act violations, 5 U.S.C.A. § 552a (West 1977); (2) the doctrine of respondent superior cannot be applied against certain individual defendants; (3) service of process has not been served on defendant Jack D. Yarbrough; (4) plaintiffs are not entitled to punitive damages under the Privacy Act; and (5) corporations cannot sue for violations of the Privacy Act. These claims are dismissed with prej-

udice. For reasons stated hereinafter, the remaining claims are denied in part and granted in part.

### Background

Plaintiffs filed this action against the Internal Revenue Service and the United States of America on October 28, 1988 alleging Privacy Act violations under 5 U.S. C.A. § 552a (West 1977) and wrongful disclosure of tax return laws under 26 U.S. C.A. § 7431 (West Supp.1989). Plaintiffs also named employees of the Internal Revenue Service as defendants and contend that these individuals violated the Privacy Act, 5 U.S.C.A. § 552a. Further, plaintiffs allege that these defendants violated constitutional guarantees protected by the Fifth Amendment of the United States Constitution.

Plaintiffs James G. Mallas and Robert V. Jones, investment counselors in Charlotte, North Carolina, organized, promoted, and sold a tax shelter program based on deductions allowed to participants in coal mining enterprises. The Internal Revenue Service questioned the validity of these deductions. In 1980, its Criminal Investigation Division conducted an investigation of Mallas and Jones and the tax shelter program. On May 23, 1983, Mallas and Jones were indicted by a Grand Jury in the Western District of North Carolina on thirty-five counts of violations relating to alleged fraud and tax evasion in connection with the program. After a jury trial in the United States District Court for the Western District of North Carolina on January 27, 1984, Mallas and Jones were acquitted on nineteen counts and convicted on sixteen counts.

Upon appeal by Mallas and Jones, the United States Court of Appeals for the Fourth Circuit reversed the convictions in an opinion decided May 20, 1985. 762 F.2d 361. After the reversal of the convictions on March 28, 1986, defendants sent a Pro Forma RAR[1] form to Tom E. Coplin and Bonnie J. Coplin who were participants in the program. The Pro Forma RAR (1)

recites that Jones and Mallas organized, promoted, and sold a coal mining promotion through Trinity Properties, Inc.; (2) states that on January 30, 1984, in federal district court in Charlotte, North Carolina, Jones and Mallas were convicted of operating a fraudulent coal mining tax shelter of Trinity Properties, Inc. and Omega Energy, Inc.; (3) states that Jones and Mallas were convicted on fourteen (sic) counts each, including conspiracy, income tax fraud, and interstate transportation [i.e., causing a person to travel in interstate in furtherance of a scheme to defraud]; and (4) states that it was determined that Jones and Mallas used a financing scheme involving a check swap designed to give the appearance that each investor borrowed the necessary funds to claim advance minimum royalty deductions.

The Pro Forma RAR also informs the investors that their loss or losses claimed in connection with the program would be disallowed because "it has not been established that the losses were incurred in a trade or business or with respect to property held for the production of income." The Pro Forma RAR goes on to state alternative reasons for disallowing the claimed deductions. Identical copies of the Pro Forma RAR were sent to other participants in the program, including plaintiffs Perry Brunk and Peoples Supply Company, Inc.

### Discussion
### Statute of Limitations

Defendants contend that the two-year statute of limitations has expired under appropriate North Carolina law, and thus any *Bivens* action under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), against the individual defendants is time-barred. Plaintiffs, on the other hand, argue that the complaint against the individual defendants was filed within the appropriate statute of limitations. Plaintiffs aver that the *Bivens* action should be governed by the

---

**1.** The Pro Forma RAR is a document submitted by the Internal Revenue Service that provides

an explanation for the denial of tax deductions.

three year North Carolina statute of limitations period for personal injury claims.

■ Because Congress has not designated a federal statute of limitations for *Bivens* actions, the court must look to North Carolina's statutes of limitation. *See Wilson v. Garcia*, 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1941–42, 85 L.Ed.2d 254 (1985); *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975). In borrowing state statutes of limitations for federal claims, a federal court must choose the state statute of limitations of the most analogous state claim provided "that the borrowed period of limitations [does] not discriminate against the federal claim." *Chin v. Bowen*, 833 F.2d 21, 23 (2d Cir.1987); *Hobson v. Wilson*, 737 F.2d 1, 32 (D.D.C.1984).

Generally, courts have held that *Bivens* actions are not significantly dissimilar to claims brought under Title 42 U.S.C.A. §§ 1981 and 1983 (West 1983) in terms of interests being protected, the relief which may be granted, and the defenses which may be asserted, *Owen v. Okure*, —— U.S. ——, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); *Chin v. Bowen*, 833 F.2d at 23 (quoting *McSurely v. Hutchison*, 823 F.2d 1002, 1005 (6th Cir.1987)), and therefore that the statute of limitations for personal injury is the applicable statute of limitations. Although Section 1983 actions are not precisely parallel, there is a general trend in the appellate courts to incorporate § 1983 law into *Bivens* suits. *Chin v. Bowen*, 833 F.2d at 24 (quoting *Ellis v. Blum*, 643 F.2d 68, 84 (2d Cir.1981)).

■ The statute of limitations in North Carolina for personal injury is three years. N.C.Gen.Stat. § 1–52(5); *Sheppard v. Barrus Construction Co.*, 11 N.C.App. 358, 181 S.E.2d 130 (1971). Because of the noted similarity between *Bivens* and Section 1983 actions, this court holds that appropriate limitations period is North Carolina's three-year personal injury statute of limitations. Furthermore, since the policies un-

derlying *Bivens* actions are essentially the same as those underlying Section 1983 actions and the two share the same practicalities of litigation, the court does not find the defendants' argument that the North Carolina personal injury statute of limitation period frustrates federal policy persuasive. *See Chin v. Bowen*, 833 F.2d at 24 (quoting *Burnett v. Grattan*, 468 U.S. 42, 50, 104 S.Ct. 2924, 2929, 82 L.Ed.2d 36 (1984)).

*Bivens Claim Based on Infringement of Fifth Amendment Rights*

Plaintiffs contend that in spite of the reversal of the convictions by the United States Court of Appeals for the Fourth Circuit, the defendants advised business associates of Mallas and Jones that the two had been involved in criminal activity and were convicted of crimes. Plaintiffs allege that disclosures of all the Pro Forma RARs violated their right to procedural due process, substantive due process, and deprived them of liberty and property interests protected by the Fifth Amendment. Plaintiffs argue that this is an actionable constitutional tort under *Bivens.*

In defense, defendants contend that the individually named federal employees are entitled to absolute immunity from damages arising out of alleged constitutional torts for wrongful disclosure of return information. In the alternative, defendants assert that the individually named federal employees are entitled to qualified immunity from damages for their alleged commission of constitutional torts or statutory violations.[2]

The United States Supreme Court discussed the issue of whether federal officials are entitled to absolute immunity from damages arising from unconstitutional action in *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1977). In *Butz*, the Supreme Court held that "in a suit for damages arising from unconstitutional action, federal executive officials exercising discretion are entitled only to the

---

**2.** Defendants also argue that they are entitled to absolute immunity from damages for claims under a common law tort theory. The court finds, and plaintiffs admit, that plaintiffs are not suing in a cause of action under the common law of North Carolina. Thus, the court will not consider the defense of absolute immunity as it relates to this claim.

qualified immunity" unless they can demonstrate that absolute immunity is essential for the conduct of business. *Id.* at 507, 98 S.Ct. at 2911. The Court provided that:

> Federal officials will not be liable for mere mistakes in judgment, whether the mistake is one of fact or one of law. But we see no substantial basis for holding, as the United States would have us do, that executive officers generally may with impunity discharge their duties in a way that is known to them to violate the United States Constitution or in a manner that they should know transgresses a clearly established constitutional rule.

*Id.*

In *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), in holding that executive officials in general are usually entitled only to qualified immunity, the Supreme Court stated:

> For executive officials in general, however, our cases make plain that qualified immunity represents the norm. In *Scheuer v. Rhodes*, 416 U.S. 232, [94 S.Ct. 1683, 40 L.Ed.2d 90] (1974), we acknowledged that high officials require greater protection than those with less complex discretionary responsibilities. Nonetheless, we held that a governor and his aides could receive the requisite protection from qualified or good-faith immunity. *Id.*, at 247–248 [94 S.Ct. at 1692]. In *Butz v. Economou, supra,* we extended the approach of *Scheuer* to high federal officials of the Executive Branch. Discussing in detail the considerations that also had underlain our decision in *Scheuer*, we explained that the recognition of a qualified immunity defense for high executives reflected an attempt to balance competing values: not only the importance of a damages remedy to protect the rights of citizens, 438 U.S., at 504–505 [98 S.Ct. at 2909–10], but also "the need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority."

*Id.* 457 U.S. at 807, 102 S.Ct. at 2732. The Court also recognized that the special func-

tions of some officials might require an exception to the norm. *Id.* (quoting *Butz,* 438 U.S. at 507, 98 S.Ct. at 2911). However, as in *Butz,* the Court held that " 'federal officials who seek absolute exemption from personal liability for unconstitutional conduct must bear the burden of showing that public policy requires an exemption from scope.' " *Harlow,* 457 U.S. at 808, 102 S.Ct. at 2733 (quoting *Butz,* 438 at 506, 98 S.Ct. at 2910).

In holding that the Attorney General is not absolutely immune from suit for damages arising out of his allegedly unconstitutional conduct in performing his national security duties, the Supreme Court in *Mitchell v. Forsyth*, 472 U.S. 511, 523, 105 S.Ct. 2806, 2813, 86 L.Ed.2d 411 (1985), emphasized that the denial of absolute immunity would not leave the federal officer at the mercy of litigants with frivolous and vexatious complaints. The Court pointed out that under the standard of qualified immunity articulated in *Harlow,* 457 U.S. 800, 102 S.Ct. 2727, the federal official would be entitled to immunity so long as his actions do not violate " 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Mitchell,* 472 U.S. at 523, 105 S.Ct. at 2814 (quoting *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738).

■ This court finds that although the individual defendants in the present case have not presented any clear evidence to overcome the burden of showing that absolute immunity is essential to their job or that public policy requires an exemption from the scope of absolute immunity, such defendants still may be entitled to a qualified immunity. *See Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Qualified immunity is the general rule for executive officials charged with constitutional violations. *Butz,* 438 U.S. at 507, 98 S.Ct. at 2911. It is determined by an objective test which provides that an official is not liable unless "[he] knew or reasonably should have known that the action he took within the sphere of official responsibility would violate the constitutional rights of the [plaintiffs], or if he took

the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the [plaintiffs]." *Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975). Therefore, the test is one of reasonable "good faith." *Id.*

■ Here, plaintiffs allege a violation of due process under the Constitution because the individual defendants stated in the Pro Forma RAR that the plaintiffs had been convicted of tax fraud when, in fact, their convictions had been overturned. However, defendants argue that these allegations, even if true, do not constitute a violation of the Constitution. In support of their contention, the defendants direct the court's attention to *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

In *Paul*, a photograph of the plaintiff bearing his name was included in a "flyer" of "active shoplifters" after he had been arrested on a shoplifting charge in Louisville, Kentucky. After that charge was dismissed, the plaintiff brought an action under 42 U.S.C.A. § 1983 (West 1981) against the chief of police, who had distributed the flyer to area merchants alleging that such action deprived him of his Fourteenth Amendment right against deprivation of life, liberty, or property without due process. The court dismissed the case holding that mere defamation of an individual, whether by branding him disloyal or otherwise, does not deprive him of liberty or property interest protected by the Fourteenth Amendment. *Id.* at 706–712, 96 S.Ct. at 1163–66.

In light of the holding in *Paul,* this court is of the opinion that the individually named employees of the Internal Revenue Service did not violate any clearly established constitutional right which would result in loss of their qualified immunity. The Court in *Harlow* states that "where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken 'with independence and without fear of consequences.'" *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2739 (quoting *Pierson,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1218).

■ This court, therefore, holds that the individually named defendants are entitled to qualified or good faith immunity for discretionary decisions within their sphere of official responsibility that have violated no settled constitutional rights held by the plaintiffs. *See Harlow,* 457 U.S. at 815–16, 102 S.Ct. at 2736–37. Moreover, the court finds that officials sued for constitutional violations which are not clearly established do not lose their qualified immunity merely because their conduct also violates some statutory or administrative provision. *Davis v. Scherer,* 468 U.S. 183, 194, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984).

*Privacy Act Claim*

■ Plaintiffs also seek damages for violation of 5 U.S.C.A. § 552a(e)(5) which requires each federal agency that keeps a system of records to "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." In addition, the statute requires agencies disseminating its records to anyone other than an agency to make reasonable efforts to ensure the records' accuracy and completeness. 5 U.S.C.A. § 552a(e)(6).

Title 5, United States Code Annotated, Section 552a(g)(1) grants jurisdiction to district courts to redress violations of 5 U.S.C.A. § 552a(e) by providing in part:

Whenever any agency—

\* \* \* \* \* \*

C. fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual; or

D. fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual,

the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.

The effect of subsection (g)(1) is that when any agency fails to comply with any other provision of this subsection or any rule promulgated thereunder in such a way as to have an adverse effect on an individual, that individual may bring a civil action in the United States courts. *Parks v. United States Internal Revenue Service,* 618 F.2d 677 (10th Cir.1980).

■ However, Internal Revenue Code, 26 U.S.C.A. § 7852(e), makes the jurisdictional section of the Privacy Act, 5 U.S.C.A. § 552a(g), inapplicable to records maintained to determine tax liability. Section 7852(e) provides, in part, that Privacy Act Section 552a(g) "shall not be applied directly or indirectly to the determination, of liability ... of any person for any tax...." In other words, Section 7852(e) acts to supersede causes of action brought under Section 552a(g) if the law suit relates directly or indirectly to the determination of the existence or possible existence of an individual's federal tax liability.

■ The court, therefore, concludes that the Pro Forma RAR at the very least was indirectly used by the Internal Revenue Service in connection with the determination of the existence or possible existence of federal income tax liability and that this court lacks subject matter jurisdiction over plaintiffs' Privacy Act action. In reaching this conclusion, the court need not consider defendants' other alleged grounds for dismissal of plaintiffs' Privacy Act Action.

*Plaintiffs' Claim Under 26 U.S.C.A. § 7431*

Finally, plaintiffs allege a cause of action under 26 U.S.C.A. § 7431. Section 7431(a)(1) provides:

If any officer or employee of the United States knowingly, or by reason of negligence, discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.

The complaint alleges that issuance of the Pro Forma RAR violated 26 U.S.C.A. § 6103 (West 1989). Section 6103 of the Internal Revenue Code states:

Returns and return information shall be confidential, and except as authorized by this title—

(1) no officer or employee of the United States,

\* \* \* \* \* \*

shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section....

26 U.S.C.A. § 6103(a).

■ The term "return information" is a broad one encompassing any information gathered by the Internal Revenue Service regarding a person's tax liability. *Dowd v. Calabrese,* 101 F.R.D. 427, 438 (D.D.C. 1984). The Internal Revenue Code specifically defines the term "return information" to include:

a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense....

26 U.S.C.A. § 6103(b)(2)(A). The term "disclosure" is defined in subsection (b)(8) as

"the making known to any person in any manner whatever a return or return information." [3]

In order for plaintiffs to prevail under Section 7431(a)(1), they must show that by a preponderance of the evidence (1) that the disclosure was unauthorized, (2) that the disclosure was made " 'knowingly or by reason of negligence,' " and (3) that the disclosure was in violation of Section 6103. *Flippo v. U.S.*, 670 F.Supp. 638 (W.D.N.C.1987). Since the information in the Pro Forma RAR pertaining to the convictions of Mallas and Jones was not accurate, that portion of Pro Forma RAR would not have been authorized under the law or the regulations. The evidence also sufficiently shows that the Internal Revenue Service acted by reason of negligence in issuing the Pro Forma RAR without making reasonable efforts to obtain accurate information regarding the reversal of the convictions. Further, after a review of Section 6103 and the exceptions to the statute, the court concludes that the disclosures by the Internal Revenue Service was in violation of Section 6103.

Moreover, since the court finds that the disclosures in question occurred within two years of filing the complaint, the instant action is not barred by the statute of limitation provision, Subsection (d) of Section 7431. The court, therefore, holds that the plaintiffs have stated a claim under Section 7431 and defendants' motion to dismiss as to this claim is denied.

### Conclusion

For the reasons stated in the above discussion, the court will DISMISS plaintiffs' constitutional tort Fifth Amendment claim and plaintiffs' Privacy Act claim under 5 U.S.C.A. § 552a pursuant to Rule 12(b), Fed.R.Civ.P. The court will DENY defendants' motion to dismiss plaintiffs' claim under 26 U.S.C.A. § 7431. The individually named defendants and the Internal Revenue Service are dismissed from this case. By reason of this court's ruling, the only remaining party is the United States of America. All other claims are dismissed.

---

**3.** Title 26 contains many exceptions to the prohibition against disclosure of "returns and return information"; however, the court is not persuaded that the case at bar clearly comes within the scope of any of these exceptions.