ESTATE OF Charles Vernon MYERS, et al., Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. CS–92–244–JBH.

United States District Court, E.D. Washington.

June 25, 1993.

Leslie R. Weatherhead, Witherspoon, Kelley, Davenport & Toole, Spokane, WA, for plaintiffs.

Carroll D. Gray, Asst. U.S. Atty., Spokane, WA, Robert P. Brouillard, Tax Div., U.S. Dept. of Justice, Washington, DC, for defendant.

ORDER DENYING PLAINTIFFS' MOTION FOR DEFAULT AND GRANTING DEFENDANT'S MOTION TO DISMISS

McDONALD, District Judge.

On April 29, 1993, Magistrate Judge Hovis filed a report and recommendation (Ct.Rec. 24) in which he recommended that the plaintiffs' motion for default be denied and that defendant's motion to dismiss be granted.

Plaintiffs have filed an objection to the report and recommendation (Ct.Rec. 25). Plaintiffs contend that the government is in default and has not shown justification for its default. Magistrate Judge Hovis' report contains persuasive reasoning why default judgment should not be granted. The court believes no further elaboration of that reasoning is warranted.

Plaintiffs also object to the finding of the magistrate judge that 26 U.S.C. § 7852(e) divests the court of subject matter jurisdiction to entertain their Privacy Act claim. According to plaintiffs, because a Canadian tax liability is at issue, section 7852(e) is inapplicable because it applies to "any tax . . . to which the provisions of this title apply." Plaintiffs contend that case law (including *United States v. Stuart*, 489 U.S. 353, 109 S.Ct. 1183, 103 L.Ed.2d 388 (1989)) establishes that it is the treaty which incorporates the Internal Revenue Code provisions, as opposed to the Internal Revenue Code incorporating the treaty provisions. Thus, plaintiffs argue, the limitation of section 7852(e) is "intrinsic" to the Internal Revenue Code and does not apply to "treaty investigations which are "extrinsic" to the Code."

The court has no difficulty with plaintiffs' proposition that it is the treaty which incorporates the Internal Revenue Code. The report and recommendation of the magistrate judge is consistent with that proposition. As the *Stuart* case notes, the treaty obliges the United States upon request and "consistent with United States revenue laws," to obtain and convey information to Canadian authorities to assist them in determining a Canadian taxpayer's income tax liability. 489 U.S. at 355, 109 S.Ct. at 1185.

26 U.S.C. § 7852(e) is part of the "United States revenue laws." The section refers to "any tax . . . to which the provisions of this title apply." The section does not refer to either domestic or foreign tax liability. The word "title" clearly means the Internal Revenue Code. However, the court finds that inconsequential. The Internal Revenue Code applies to the Canadian tax liability via the treaty.

As the Supreme Court noted in *Stuart*, 26 U.S.C. § 7602(c) is an exception to the rule. It does not apply to Canadian tax liabilities because: 1) by its specific terms, it speaks only to criminal violations of United States revenue law; 2) its legislative history shows that Congress did not intend to make the enforcement of a treaty summons contingent upon the foreign tax investigation having reached a stage analogous to a Justice Department referral; and 3) because Canada has ceased using grand juries and has considerably different criminal discovery procedures, the concerns that motivated Congress to enact section 7602(c) (i.e. not wanting to broaden the Justice Department's right of criminal litigation discovery or to infringe on the role of the grand jury) are not present when the IRS issues a summons at the request of Canadian authorities conducting investigations into violations of their own tax laws. 489 U.S. at 362–64, 109 S.Ct. at 1189–90.

It is significant that the Supreme Court did not restrict its analysis to the "terms" of the statute (section 7602(c)). Rather, the Court probed into the legislative history of the section and determined whether there was a compelling rationale for extending the restriction to a foreign tax liability situation. If by its "terms" alone, the section is not

applicable to foreign tax liabilities, the Court's extended analysis appears to be either an unnecessary effort or an acknowledgement that the restriction might very well apply to foreign tax liabilities in the absence of some compelling rationale indicating otherwise. This court believes the latter is true.

By its terms, section 7852(e) applies to "any tax." The court has not been cited any legislative history nor have plaintiffs advanced any compelling rationale why the IRS should not have the protection of the statute when it is collecting a foreign tax liability as opposed to a domestic tax liability. In that respect, section 7852(e) is distinct from section 7602(c).

The court **ADOPTS** the report and recommendation of Magistrate Judge Hovis in its entirety.

**IT IS HEREBY ORDERED** that plaintiffs' motion for default is **DENIED** and that defendant's motion to dismiss is **GRANTED.** The Clerk of the Court will enter judgment accordingly and forward copies of this order and the judgment to counsel.

## REPORT AND RECOMMENDATION

HOVIS, United States Magistrate Judge.

BEFORE THE COURT is the defendant's motion to dismiss (Ct.Rec. 13) and the plaintiffs' motion for default (Ct.Rec. 18). Defendant's motion to dismiss is premised on Fed. R.Civ.P. 12(b)(1), lack of jurisdiction over the subject matter, and 12(b)(6), failure to state a claim upon which relief can be granted. These motions are before the undersigned for the preparation of a report and recommendation pursuant to an order of reference entered by the Honorable Alan A. McDonald (Ct.Rec. 23).

## FACTUAL AND PROCEDURAL BACKGROUND

On June 4, 1992, the Internal Revenue Service issued a 26 U.S.C. § 7602 summons to Robert Magnuson, Esq., attorney for the Estate of Charles Vernon Myers (hereinafter "the estate"), seeking the production of records "relative to the disposition of any and all assets" of the estate on or following February 23, 1990. The summons was issued pursuant to a request under certain articles of the United States–Canada Income Tax Convention. The summons is titled as "the matter of the Canadian tax liability" of the estate. (See exhibit attached to Ct.Rec. 1).

The summons was withdrawn by the Internal Revenue Service (hereinafter "IRS") on October 16, 1992. Accordingly, on December 9, 1992, plaintiffs' counsel filed a notice voluntarily dismissing the first cause of action set forth in the complaint. That cause of action, entitled "Quashal," alleged that the summons was not issued for an identifiable or proper purpose and that it sought documents which are either irrelevant, already in the possession of the IRS, protected by attorney-client privilege or related to non-existent, bad faith or time-barred claims.

The defendant's motion to dismiss pertains to the second and third causes of action alleged in the complaint. The second cause of action alleges that the summons fails to comply with 5 U.S.C. § 552a(e), that the failure to comply is willful and that the plaintiffs have been "adversely affected" and are entitled to statutory damages.

Plaintiffs' third cause of action seeks an award of attorney fees under 28 U.S.C. § 2412 and 5 U.S.C. § 552a(g)(4) on the basis that defendant was not "substantially justified" in issuing the summons.

Following the filing of the complaint, defendant moved for an extension of time to respond and Judge McDonald granted an extension to September 21, 1992 (Ct.Rec. 5). Defendant moved for a second extension of time. Judge McDonald granted an additional extension to November 20, 1992 (Ct.Rec. 10). On January 19, 1993, defendant's motion to dismiss was filed with this court.

## MOTION FOR DEFAULT

Plaintiffs argue that entry of default judgment is appropriate because the defendant did not file a response on or before November 20, 1992 as ordered by the court.

Fed.R.Civ.P. 55(b)(2) requires that a party must apply to the court for default judgment. Furthermore, if the party against

whom default judgment is sought has appeared in the action, that party must be served with written notice of the application for judgment at least three days prior to the hearing on such application. Plaintiffs did not apply for default judgment prior to the defendant's filing of its motion to dismiss.[1] Accordingly, plaintiffs' motion for default judgment is untimely and moot.

■ Plaintiffs seem to suggest that default judgment should be granted as a sanction for defendant's failure to abide by the November 20, 1992 deadline. Even were it within the court's discretion to impose such a sanction, the circumstances convince the court that such a sanction is inappropriate.

Defendant's counsel represents that once the IRS withdrew its summons, he anticipated that plaintiffs would dismiss the complaint in its entirety, therefore making a response unnecessary. In the absence of a specific agreement with plaintiffs' counsel to that effect, this presumption on the part of defendant's counsel seems a bit hasty. On the other hand, subsequent to the expiration of the November 20 deadline, plaintiffs' counsel voluntarily dismissed the first cause of action for "quashal" of the summons. Accordingly, the failure of defendant's counsel to file a responsive pleading before November 20 does not seem entirely unreasonable. The willingness of defendant's counsel to assume personal responsibility for any monetary sanction indicates that the court's deadline was not violated with impunity. Particularly since the summons has been withdrawn, the court fails to see how plaintiffs have been prejudiced by defendant's delay in filing the motion to dismiss. Indeed, if plaintiffs thought they were entitled to default judgment following expiration of the November 20 deadline, the court questions why they filed a notice of partial dismissal rather than a motion for default judgment or a motion for the imposition of sanctions.

The court prefers to dispose of cases on their merits. In this case, default judgment as a sanction for a single failure to adhere to a court deadline would be an abuse of discretion. The court reprimands defendant's counsel for being too hasty in his presumptions; however, anything more severe (i.e., monetary sanctions) is not warranted.

The undersigned **RECOMMENDS** that plaintiffs' motion for default judgment be **DENIED.**

## MOTION TO DISMISS

Defendant submits that plaintiffs' cause of action under the Privacy Act, 5 U.S.C. § 552a(e), is subject to dismissal for failure to state a claim upon which relief can be granted and because the court lacks subject matter jurisdiction.

5 U.S.C. § 552a(e) provides in relevant part:

Each agency that maintains a system of records shall—

(3) inform each individual whom it asks to supply information, on the form which it uses to collect the information or on a separate form that can be retained by the individual—

(A) the authority (whether granted by statute or executive order of the President) which authorizes the solicitation of the information and whether disclosure of such information is mandatory or voluntary;

(B) the principal purpose or purposes for which the information is intended to be used;

(C) the routine uses which may be made of the information, ...; and

(D) the effects on him, if any, of not providing all or any party of the requested information;

5 U.S.C. § 552a(g) provides in relevant part:

(1) **Civil Remedies.** Whenever any agency—

(D) fails to comply with any other provision of this section, or any rule promul-

---

1. Plaintiff also did not apply for a clerk's default under Fed.R.Civ.P. 55(b)(1). In any event, such an application would probably have been inappropriate since by virtue of the motions for ex- tension of time and the appearance of counsel at the status conference, defendant indicated an intention to defend against the suit.

gated thereunder, in such a way as to have an adverse effect on an individual, the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.

(4) In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of—

(A) actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; and

(B) the costs of the action together with reasonable attorney fees as determined by the court;

Defendant cites a host of case law holding that compliance with the Privacy Act is not a prerequisite to the enforcement of an IRS summons. *United States v. Bressler,* 772 F.2d 287 (7th Cir.1985); *United States v. McAnlis,* 721 F.2d 334, 337 (11th Cir.1983); *United States v. Berney,* 713 F.2d 568, 573 (10th Cir.1983); *United States v. Wilber,* 696 F.2d 79 (8th Cir.1982). Plaintiffs argue, however, that these cases are irrelevant because *enforcement* of the summons is not the issue. Plaintiffs note that the summons has already been withdrawn and that enforcement is no longer a consideration. Plaintiffs submit that the only issue concerns the *contents* of the summons served upon them.

■ The prima facie conditions for *enforcement* of an IRS summons pursuant to 26 U.S.C. § 7604 bear some resemblance to the *content* requirements set forth in 5 U.S.C. § 552a(e)(3). To obtain *enforcement* of a summons, the United States must establish: (1) the summons was issued for a legitimate purpose; (2) the summoned data must be relevant to that purpose; (3) the data is not already in the government's possession; and (4) the administrative steps required for issuance and service have been followed. *United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–55, 13 L.Ed.2d 112 (1964).

The United States may make a prima facie case for judicial enforcement by a minimal showing that these requirements have been met in good faith. This standard is satisfied by affidavits or declarations of the investigating agent stating that the requirements of good-faith have been met. *See United States v. Abrahams,* 905 F.2d 1276, 1280 (9th Cir. 1990) (citations omitted). Once the government has made its showing of good-faith, the burden shifts to the taxpayer to show that the enforcement of the summons would be an abuse of the court's process. *Powell,* 379 U.S. at 58, 85 S.Ct. at 255.

■ Pursuant to *Abrahams,* it is not necessary for the face of the summons to prove that the good-faith requirements of *Powell* have been met. This can be done by affidavits and declarations which are completely separate from the summons. Therefore, the fact that the IRS may ultimately be able to prove that its summons is issued in good faith and that enforcement is appropriate does *not* necessarily mean that the summons meets the content requirements specified in the Privacy Act. Whereas *Powell* insures that the IRS has a good faith basis for the issuance of a summons, the Privacy Act insures that the taxpayer gets proper notice from the summons itself of the authority which allows the IRS to obtain the information, the purpose for which the information is intended to be used, the routine uses which may be made of the information, and the adverse effects of not supplying the information. Accordingly, it is possible that a summons may be judicially enforceable yet not meet the disclosure requirements of the Privacy Act.

Section 552a(e)(3) specifically requires the government agency to inform each individual "*on the form*" or "*on a separate form*" (emphasis supplied). The court is not aware of any case law which allows the IRS to comply with section 552a(e)(3) by any other means than a summons or other "form" which meets the requirements of that section. *United States v. Wills,* 475 F.Supp. 492 (M.D.Fla. 1979), cited by *McAnlis, supra,* appears to be consistent with this court's rationale. In *Wills,* the court stated that "5 U.S.C. [Sec-

tion] 552, contains specific provisions for *its enforcement* none of which contemplate denial of enforcement of an Internal Revenue Service summons." *Id.* at 494. Presumably, the *Wills* court is referring to the civil remedies set forth in section 552a(g)(1). *See also Bressler,* 772 F.2d at 292–93 ("even if the defendant had made a sustainable argument, the proper remedy is a civil action under section 552a(g)(1) of the Privacy Act, not dismissal of the indictment" charging him with failing to file income tax returns and with tax evasion); and *Berney,* 713 F.2d at 572 (Privacy Act contains its own remedies for noncompliance).

The defendant makes a more compelling argument for dismissal in its reply to plaintiffs' cross-motion for default. According to defendant, this court is divested of subject matter jurisdiction by virtue of 26 U.S.C. § 7852(e) which provides:

> The provisions of subsections (d)(2), (3), and (4), and (g) of section 552a of title 5, United States Code, shall not be applied, directly or indirectly, to the determination of the existence or possible existence of liability (or the amount thereof) of any person for any tax, penalty, interest, fine, forfeiture, or other imposition or offense to which the provisions of this title apply.

Plaintiffs argue that section 7852(e) is inapplicable in the instant case because the subject matter of the summons is the Canadian tax liability of the plaintiffs. Plaintiffs contend that when strictly construed, the specific language of the statute refers only to domestic taxes. Plaintiffs further contend that the section is inapplicable because IRS authority to summon information in aid of Revenue Canada does not originate in the Internal Revenue Code but in the tax treaty between the United States and Canada (Convention between the United States and Canada Respecting Double Taxation, Mar. 4, 1942).

The only published decisions available to the court involving application of section 7852(e) do not involve foreign tax liability. *England v. Commissioner of Internal Revenue Service,* 798 F.2d 350 (9th Cir.1986); *Mallas v. Kolak,* 721 F.Supp. 748 (M.D.N.C. 1989); and *Dyrda v. Commissioner of Internal Revenue Service,* 633 F.Supp. 2 (D.Neb. 1985). Accordingly, the court will have to turn elsewhere for guidance.

In *United States v. Stuart,* 489 U.S. 353, 109 S.Ct. 1183, 103 L.Ed.2d 388 (1989), the Supreme Court discussed the use of an IRS summons for the purpose of obtaining information related to a Canadian tax liability. Articles XIX and XXI of the Convention oblige the United States upon request and *"consistent with United States revenue laws,"* to obtain and convey information to Canadian authorities to assist them in determining a Canadian taxpayer's income tax liability. *Id.* at 355, 109 S.Ct. at 1185. Before the Court was the issue of whether an IRS summons could be enforced in spite of the fact that the investigation by Revenue Canada was of a criminal nature.

Pursuant to 26 U.S.C. § 7602(c), the IRS may not issue a summons to further its investigation of a United States taxpayer when a Justice Department referral is in effect. *Id.* at 357, 109 S.Ct. at 1186. The Court noted, however, that section 7602(c), "by its terms," did not apply to the IRS summons at issue because it speaks only to investigations into possible criminal violations of United States revenue law. In *Stuart,* there was no Justice Department referral in effect and there was no pending domestic tax investigation. *Id.* at 362, 109 S.Ct. at 1189.

The Court also noted the absence of any legislative history suggesting that section 7602(c) intended the summons authority to broaden the Justice Department's right of criminal litigation discovery or to infringe on the role of the grand jury as a principal tool of criminal accusation. The Court concluded that this explanation for the section 7602(c) restriction suggested that Congress did not intend to make the enforcement of a treaty summons contingent upon the foreign tax investigation not having reached a stage analogous to a Justice Department referral. *Id.* at 362–63, 109 S.Ct. at 1189–90.

The Court observed that Canada had ceased using grand juries and that criminal discovery procedures are considerably different among the countries with whom the United States has tax treaties. As such, the

concerns which motivated Congress to enact section 7602(c) are not present when the IRS issues a summons at the request of most foreign governments conducting investigations into possible violations of their own tax laws. According to the Court:

> If Congress had intended [section] 7602(c) to impose a restriction on the issuance of summonses pursuant to treaty requests parallel to the restriction it expressly imposes on summonses issued by the IRS in connection with domestic tax investigations, it would have presumably have offered some reason for extending the sweep of the section beyond its plain language.

*Id.* at 364, 109 S.Ct. at 1190.

The Court went on to say that the "only conceivable foundation" for a rule that an IRS summons issued at the request of Canadian authorities may not be enforced unless the IRS provides assurance that the Canadian investigation has not proceeded to a stage analogous to a Justice Department referral is the language of the 1942 Convention (i.e. the tax treaty). However, the Court noted that Articles XIX and XXI both refer to information that the IRS may obtain under *American law* and that such law does not contain a restriction on the issuance of summons related to foreign tax investigations. The only restriction applies when a United States Department of Justice referral is in effect. *Id.* at 365–66, 109 S.Ct. at 1190–91.

The Court concluded that nothing in the legislative history of the Convention, the practice of the treaty signatories, or the IRS's construction of the Convention suggested that the Convention was intended to incorporate domestic restrictions on the issuance of summonses by the IRS in connection with American tax investigations. The Court also observed that respondent's interpretation would result in disputes over when a Canadian tax investigation had progressed to a point analogous to a Justice Department referral, thus resulting in protracted litigation and defying Congressional intent that summons enforcement proceedings be sum-

mary in nature and that discovery be limited. *Id.* at 367–69, 109 S.Ct. at 1192–93.

█ Obviously, in the case before this court there is no evidence of a Justice Department referral or a foreign criminal tax investigation. However, the undersigned believes that the significance of *Stuart* for the instant case does not lie so much in its facts or its result, but rather in the Supreme Court's analysis. The Court did not rely on the treaty exclusively for determining IRS authority to issue the summons. The treaty empowers the Commissioner of the Internal Revenue Service to supply Canadian authorities with relevant information he "is entitled to obtain under the revenue laws of the United States of America." *Id.* at 365, 109 S.Ct. at 1190. The first step of the Court's analysis in *Stuart* was an examination of the Internal Revenue Code. The Court basically found that even though a Canadian tax liability was involved, the IRS summons was to be scrutinized under the Internal Revenue Code provisions just like a summons pertaining to a domestic tax liability. Section 7602(c) was found inapplicable because by its "plain language" it did not apply to foreign criminal tax investigations. Furthermore, there was nothing in the treaty contravening that "plain language."[2]

Section 7852(e) refers to "*any* tax, penalty, interest, fine, forfeiture, or other imposition or offense to which the provisions of this title apply." The summons provisions of the Internal Revenue Code apply to the determination of the Canadian tax liability of an individual situated in this country. The fact that the Internal Revenue Code provisions are made applicable to such liability by virtue of a tax treaty is of no apparent consequence. Plaintiffs have offered no compelling reason why the distinction between a Canadian tax liability and a domestic tax liability is of any significance. Plaintiffs have not offered any legislative history either of the treaty or of the Internal Revenue Code indicating that determinations of foreign tax liability made through the assistance of an IRS summons

---

**2.** Compare *United States v. Manufacturers and Traders Trust Co.,* 703 F.2d 47 (2d Cir.1983) where the Second Circuit reached the same result as the Supreme Court in *Stuart,* but not because of the "plain language" of I.R.C. § 7602(c). The circuit restricted its analysis to an interpretation of the treaty.

are to be treated any differently from determinations of domestic tax liability made through the same mechanism.

The court lacks subject matter jurisdiction to consider plaintiff's Privacy Act claim. Accordingly,

**IT IS RECOMMENDED** that defendant's motion to dismiss be **GRANTED** and that plaintiffs' complaint be **DISMISSED with prejudice.**[3]

Any party may object to the magistrate judge's proposed findings, recommendations or report within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of the Court and serve on all parties written objections, specifically identifying the portions to which objection is being made, and the basis therefor. Any response to the objection shall be filed within ten (10) days after receipt of the objection. Attention is directed to Fed.R.Civ.P. 6(e) which adds another three (3) days from the date of mailing where service is by mail.

A district judge shall make a de novo determination of those portions to which objection is made and may accept, reject, or modify the magistrate judge's determination. The district judge need not conduct a new hearing or hear arguments and may consider the magistrate judge's record and make his own determination thereon. The district judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. See 28 U.S.C. § 636(b)(1)(B) and (C), Fed.R.Civ.P. 73 and LMR 4.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

The Clerk of the Court SHALL file this report and recommendation and serve copies of it on the referring judge and counsel.

DATED this 29th day of April, 1993.

---

**3.** The court need not consider plaintiffs' petition for attorney fees.